O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREG SULLIVAN, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICAN EXPRESS PUBLISHING CORPORATION, TIME, INC.<br><br>Defendants. | CASE NO. SACV 09-142-JST (ANx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY SETTLEMENT APPROVAL AND SETTING A FAIRNESS HEARING FOR OCTOBER 24, 2011, AT 10:00 A.M.** |

## I. INTRODUCTION

Before the Court is Plaintiff Greg Sullivan's unopposed Motion for preliminary settlement approval. (Doc. 57.) The Motion asks the Court to preliminarily approve the proposed settlement, conditionally certify the settlement class, appoint Plaintiff as class representative and Plaintiff's counsel as class counsel, and approve the form and method of class notice. Having reviewed the papers and taken the matter under submission, the Court GRANTS Plaintiff's Motion and sets a fairness hearing for October 24, 2011, at 10:00 a.m.

## II. BACKGROUND

On February 5, 2009, Plaintiff, on behalf of himself and all others similarly situated, filed a class-action complaint against Defendants American Express Publishing Corporation ("AEPC") and Time, Inc. alleging that Defendants engaged in illegal debt collection when they sent subscribers of *Travel+Leisure* magazine envelopes containing the phrase "OVERDUE INVOICE" on the outside. (Compl., Doc. 1, ¶ 13.) Based on Defendants' alleged action, Plaintiff asserts a single claim for unfair debt collection under California's Rosenthal Fair Debt Collection Practices Act, California Civil Code sections 1788-1788.33. (*See* Second Amended Complaint, "SAC," Doc. 33.)

On December 20, 2010, Plaintiff filed a notice of settlement. (Doc. 53.) The proposed Settlement Agreement is on behalf of "all persons in the State of California who, between January 24, 2008 and December 31, 2010, were subscribers of *Travel+Leisure* magazine and received from AEPC and/or Time a Qualifying Communication" (the "class"). (Stipulation and Agreement of Settlement, "Settlement Agreement," ¶ 2.25.) A "Qualifying Communication" is defined as "an invoice for payment of a *Travel+Leisure* magazine subscription sent by AEPC or Time to California residents . . . in the Settlement Class in an envelope that reflected the words 'OVERDUE INVOICE' on the exterior of the envelope." (*Id.* ¶ 2.18.)

Under the Settlement Agreement, the parties agreed that class members will have the option to receive either a one-year subscription to their choice of three magazines,

2

including *Travel+Leisure,* or a cash payment of up to $27.50. (Settlement Agreement ¶¶ 2.3, 2.28, 4.1, 4.2.) The cash payment aggregate amount is capped at $180,000 and the payments to each individual class member will be pro-rated accordingly. (*Id.* ¶ 4.2.) Class members who do not exclude themselves will release all claims that were or could have been brought in the Second Amended Complaint. (*Id.* ¶¶ 2.19-2.20.) For prospective class members who want to opt-out, the Settlement Agreement allows them to send notice to the Settlement Administrator within 60 days of a preliminary approval order. (*Id.* § IX, Exh. A.) The Settlement Agreement further requires Defendants to refrain from engaging in the challenged conduct for a year. (*Id.* ¶ 4.3.)

## III.    CONDITIONAL CERTIFICATION OF THE CLASS

### A. <u>Legal Standard</u>

Plaintiff requests conditional certification of the class pursuant to Rule 23. "To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)." *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, --- S. Ct. ----, 2011 WL 2437013, at *6 (June 20, 2011). "Under Rule 23(a), the party seeking certification must demonstrate, first, that":

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* at *5 (citing Fed. R. Civ. P. 23(a)). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Id.* Rule 23(b) is satisfied if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b). "Rule 23 does not set forth a mere pleading standard," thus "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.* at *7. This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.*

B.  Requirements Under Rule 23(a)

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "As a general rule, classes of forty or more are considered sufficiently numerous."  *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008); *see also Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 913-914 (9th Cir. 1964) ("'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.") (internal quotation marks and citation omitted).  Plaintiff has submitted evidence that the proposed class has approximately 6,576 members throughout California.  (Russell Decl., Doc. 57-2, ¶ 2.)  Plaintiff has therefore satisfied the numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Dukes*, 2011 WL 2437013 at *7 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  "This does not mean merely that they have all suffered a violation of the same provision of law," but instead that their claim(s) "depend upon a common contention . . . of such a nature that is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  Although "for purposes of Rule 23(a)(2) even a single common question will do," *id.* at *11 (internal citation and quotation marks omitted), "[w]hat matters to class certification is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id.* at *7 (emphasis included).

Here, the class members have suffered the same injury – the receipt of a Qualifying Communication as subscribers to the subject magazines.  Furthermore, there exist

numerous common questions that are capable of classwide resolution and that depend on common answers: whether Defendants are debt collectors under the Rosenthal Act, whether Defendants' sending of the Qualifying Communication to class members qualified as debt collection, and whether such alleged debt collection was intentional or occurred notwithstanding procedures reasonably adapted to avoid such an alleged violation. *See* Cal. Civ. Code § 1788.30(e). Thus, Plaintiff has satisfied the commonality requirement.

### 3. Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Dukes v. Wal-Mart*, 603 F.3d 571, 580 (9th Cir. 2010) (en banc) (quoting *Hanlon*, 150 F.3d at 1020), *rev'd on other grounds*, --- S. Ct. ----, 2011 WL 2437013 (June 20, 2011). As to the representative, "[t]ypicality requires that the named plaintiffs be members of the class they represent." *Id.* at 613 (citing *Falcon*, 457 U.S. at 156). The commonality, typicality, adequacy-of-representation requirements "tend to merge" with each other. *Dukes*, 2011 WL 2437013 at *7 at n.5 (citing *Falcon*, 457 U.S. at 157-58 n.13). As a subscriber of *Travel+Leisure* magazine during the relevant period who received a Qualifying Communication, Plaintiff is a member of the proposed class and has suffered the same injury as his fellow class members. (*See* Russell Decl., Exh. 2, Sullivan Decl. ¶¶ 2-4.) Plaintiff has therefore satisfied the typicality requirement.

### 4. Representative Party

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This factor requires: (1) that the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and (2) that plaintiffs are represented by

qualified and competent counsel." *Dukes*, 603 F.3d at 614. As to Plaintiff, he declares that he has "no known conflicts of interest with any other subscribers of *Travel+Leisure* magazine" and promises to "fairly and adequately represent the interests of the class." (*Id.* ¶ 5.) Thus, the Court concludes that Plaintiff is an adequate representative of the class and appoints him as class representative. As to the adequacy of Plaintiff's counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Plaintiff's counsel Charles S. Russell and Robert W. Thompson have both submitted declarations attesting to their own personal experience in similar class action matters and their firm's general experience in handling class action suits. (Rusell Decl. ¶ 7; *id.*, Exh. 3, Thompson Decl. ¶¶ 5-7.) Based on Plaintiff's counsels' experience, and their work in the matter thus far, the Court concludes that Plaintiff's counsel has satisfied the adequacy requirements under Rule 23(g).[1] Therefore, the Court appoints Plaintiff's counsel as class counsel in this matter.

### C. Requirements Under Rule 23(b)

In addition to establishing the elements of Rule 23(a), Plaintiffs must also satisfy one of the three elements of Rule 23(b). Plaintiff seeks certification under Rule 23(b)(3), alleging that common questions predominate over any individual issues that may exist in this case. (Pl.'s Mot. at 9.) Under Rule 23(b)(3), a class action may be maintained if: "[1]

---

[1] Plaintiff requests preliminary approval of attorney's fees and costs, and a service award for Plaintiff. (Pl.'s Mot. at 12-14; *see* Settlement Agreement ¶ 5.1.) Such requests are premature. If and when final approval of the settlement occurs, the Court will address attorney's fees, costs, and Plaintiff's service award at that time. Further, Plaintiff's counsel has not made a sufficient showing as to attorney's fees and costs. Only one paragraph of Charles S. Russell's declaration is devoted to the subject, and that paragraph failed to provide adequate detail as to hours worked or billing rates. (Russell Decl. ¶ 11.)

the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and [2] that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. R. 23(b)(3) (emphasis added).  The Court may consider:

> (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action.

Fed. R. Civ. R. 23(b)(3).  Plaintiff's claim satisfies both the predominance and superiority requirements.

As to the predominance factor, the Supreme Court has explained that it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed.1986)). Here, Plaintiff's claim under the Rosenthal Act entails nothing but common questions and issues for the class, namely whether Defendants qualify as debt collectors under the statute, whether Defendants' acts of sending the Qualifying Communications constituted prohibited debt collection activities, and whether Defendants intentionally sent the Qualifying Communications to the class members.  Moreover, because the class seeks statutory damages, variances involved in proving individual damages do not arise.

The Court also finds that a class action would be a superior method of adjudicating Plaintiff's claim.  "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023.  "This determination necessarily involves a

comparative evaluation of alternative mechanisms of dispute resolution." *Id.* Here, each member of the class pursuing a claim individually would burden the judiciary and run afoul of Rule 23's focus on efficiency and judicial economy. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy."). Further, litigation costs would likely "dwarf potential recovery" if each class member litigated individually. *Hanlon*, 150 F.3d at 1023. "[W]here the damages each plaintiff suffered are not that great, this factor weighs in favor of certifying a class action." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1199 n.2 (9th Cir. 2001) (quoting *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 652 (C.D. Cal. 1996)).

Considering the non-exclusive factors under Rule 23(b)(3)(A)-(D), the Court finds that class members' potential interests in individually controlling the prosecution of separate actions and the potential difficulties in managing the class action do not outweigh the desirability in concentrating this matter in one litigation. *See* Fed. R. Civ. P. 23(b)(3)(A), (C). This particular forum is desirable because the class members worked in California. *See* Fed. R. Civ. P. 23(b)(3)(C). The Court is not aware of any litigation concerning the controversy that has already begun by or against class members. *See* Fed. R. Civ. P. 23(b)(3)(B). Finally, the Court does not foresee any likely difficulties in managing this case as a class action.

## IV. PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

To preliminarily approve a proposed class-action settlement, Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the

experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026).

### A. Strength of Plaintiff's Case

Plaintiff notes that, although he believes his case has merit, issues of whether Defendants qualify as debt collectors and whether their conduct qualified as debt collection under the Rosenthal Act, as well as the strength of Defendants' affirmative defenses, make victory for Plaintiff less than certain. (Pl.'s Mot. at 11.) For example, Defendant denies that it is subject to consumer debt collection laws. (*See* Russell Decl., Exh. 1, Responses of Defendant AEPC to Pl.'s Interrogs., Resps. 7, 8.). Noting this, and because the proposed settlement was reached through extensive, good faith arm's-length negotiations after more than two years of litigation, (Settlement Agreement ¶ 1.3; Russell Decl. ¶ 11,) the Court concludes that the parties' decision to reach a settlement in this matter was reasonable.

### B. Likely Expense and Duration of Further Litigation

Plaintiff's Motion does not address this factor, but undoubtedly the expense incurred by Plaintiff and the purported class will increase as the case progresses. This action has ensued for two years, and neither side has brought dispositive motions. Thus, if settlement were not reached, Plaintiff and potential class members would likely incur

additional costs in conducting further discovery, defending or bringing dispositive motions, and, if applicable, preparing for and participating in trial. Because Plaintiff fails to set forth any information as to this factor, however, prior to the fairness hearing Plaintiff's counsel shall submit a declaration addressing the likely expense and duration of further litigation.

C. Extent of Discovery Completed

Plaintiff represents that "sufficient discovery was completed" before the parties reached a settlement, but the Motion fails to provide adequate detail in that regard. Other than an unspecified amount of written discovery and production of documents and the depositions of Plaintiff and AEPC's Rule 30(b)(6) witnesses, (Pl.'s Mot. at 11; Settlement Agreement ¶ 1.4,) the Court is unaware of what discovery has been conducted. Therefore, before the fairness hearing, Plaintiff's counsel shall outline in a declaration the nature and scope of the discovery the parties have completed.

D. Risk of Maintaining Class Certification

The Court has not been made aware of any specific risks of maintaining class certification were the case to go to trial. Accordingly, the Court need not consider this factor for settlement purposes. *See In re Veritas Software Corp. Sec. Litig.,* No. C-03-0283 MMC, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15, 2005) (favoring neither approval nor disapproval of settlement where the court was "unaware of any risk involved in maintaining class action status"), *aff'd in relevant part*, 496 F.3d 962 (9th Cir. 2007); *Murillo v. Pac. Gas & Elec. Co.,* No. CIV. 2:08-1974 WBS GGH, 2010 WL 2889728, at *7 (E.D. Cal. July 21, 2010) (favoring neither approval nor disapproval of settlement where the court was "unaware of any specific difficulty in maintaining class-action status were [the] case to continue to trial").

E.  <u>Amount Offered in Settlement</u>

Because Plaintiff and the class seek statutory damages under the Rosenthal Act, the total recovery is capped at $500,000 pursuant to 15 U.S.C. 1692k.  *See* Cal. Civ. Code § 1788.17; 15 U.S.C. § 1692k.  With a potential class size of 6,576 individuals, the total individual award, if victorious, would thus be $76.   The Settlement Agreement allows class members to choose from between a cash award of $27.50 or a one-year magazine subscription, valued between $29.95 and $59.88, subject to a cap on all cash payments of $180,000.  (Settlement Agreement ¶¶ 4.1, 4.2.)  Additionally, Defendants have agreed to cease using the challenged language, i.e., the Qualifying Communications, for one year. Considering the risks of proceeding to trial and comparing the settlement payout with the maximum payout that could be obtained through trial, the settlement amount is fair, reasonable, and adequate.

F.  <u>Experience and Views of Counsel</u>

As discussed above, Plaintiff's counsel has experience serving as plaintiff's counsel in class actions, and, along with Defendants' counsel, have fully endorsed the settlement agreement as fair, reasonable, and adequate.  (Settlement Agreement ¶¶ 1.3, 1.4.)

G.  <u>Reaction of Class Members to Proposed Settlement</u>

Plaintiff provides no evidence regarding class members' reaction to the proposed settlement.  Prior to the fairness hearing, Plaintiff's counsel shall submit a sufficient number of declarations from class members, including Plaintiff, discussing their reactions to the proposed settlement.

**V. PRELIMINARY APPROVAL OF CLASS NOTICE FORM AND METHOD**

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all

members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). However, actual notice is not required. *See Silber v. Mabon,* 18 F.3d 1449, 1454 (9th Cir. 1994).

The Settlement Agreement states that notice will be mailed to persons qualified to be class members within 30 days of the entry of the preliminary approval order. (Settlement Agreement ¶ 8.1.) The mail will be sent to the member's last known address as identified in Defendants' records. (*Id.*) Notice by mail has been found by the Supreme Court to be sufficient if the notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Plaintiff has provided the Court with a copy of the proposed notice. (Settlement Agreement, Exh. A.) Under Rule 23, the notice must include, in a manner that is understandable to potential class members, "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). The proposed notice includes this necessary information. (*See* Settlement Agreement, Exh. A.) The Court notes, however, that the Settlement Agreement provides that a class member seeking to object to the Settlement Agreement shall file any objection no later than thirty days before the fairness hearing. (*Id.* ¶ 10.2.) The proposed notice indicates that such objection should be filed "60 days after Preliminary Approval." (*Id.*, Exh. A. at 1.) The proposed notice should indicate, pursuant to the Settlement Agreement, that the members shall file any objection no later than thirty days before the fairness hearing scheduled for October 24, 2011, at 10:00 a.m. With that change, the Court finds the notice to be the best notice that is practicable under the circumstances, and approves the form and method of class notice.

## VI. CONCLUSION

Accordingly, the Court: (1) conditionally certifies the class, and appoints Greg Sullivan as settlement class representative and Callahan, Thompson, Sherman & Caudill, LLP as settlement class counsel; (2) preliminarily approves the Settlement Agreement; (3) approves the form and method of class notice with the modification that, pursuant to the Settlement Agreement, class members' objections to the Settlement Agreement shall be filed no later than thirty days before the fairness hearing.

The Court sets a fairness hearing for October 24, 2011, at 10:00 a.m. to determine whether the Settlement Agreement should be finally approved as fair, reasonable, and adequate to class members. Plaintiff's counsel shall file all additional supporting documentation noted by the Court and brief(s) supporting final approval of the Settlement Agreement, an award of reasonable attorney's fees and costs, and an award of a reasonable class representative service fee no later than twenty-eight days before the fairness hearing. The Court expects that counsel will address all issues noted by the Court in this order. As indicated above, the notice shall indicate that any class member seeking to object to the Settlement Agreement shall file any objection no later than thirty days before the fairness hearing. Plaintiff may file written replies to any of the class members' written objections no later than fourteen days before the fairness hearing.

The Court reserves the right to continue the date of the fairness hearing without further notice to class members. The Court retains jurisdiction to consider all further applications arising out of or in connection with the Settlement Agreement.


DATED: June 30, 2011

**JOSEPHINE STATON TUCKER**
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE