ROBERT W. THOMPSON, Esq. (SBN 106411)
CHARLES RUSSELL, Esq. (SBN 233912)
**CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP**
2601 Main Street, Suite 800
Irvine, California 92614
Tel.: 949-261-2872
Fax: 949-261-6060
Email : rthompson@ctsclaw.com
crussell@ctsclaw.com

Attorneys for Plaintiff,
**GREG SULLIVAN, individually, and on behalf of all others similarly situated**

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GREG SULLIVAN, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICAN EXPRESS PUBLISHING CORPORATION; TIME, INC.; and DOES 1-10,<br><br>Defendants. | Case No.: SACV09-142 JST (ANx)<br>JUDGE: Hon. Josephine Staton Tucker<br>DEPARTMENT: 10A<br>COMPLAINT DATE: 02/05/2009<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**(Stipulation and Agreement of Settlement with Exhibits, [Proposed] Order, and supporting declarations lodged concurrently herewith)**<br><br>**DATE: October 24, 2011**<br>**TIME: 10:00 a.m.**<br>**JUDGE: Hon. Tucker**<br>**DEPT.: 10A** |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD**:

**NOTICE IS HEREBY GIVEN** that on October 24, 2011, at 10:00 a.m., a hearing on matters raised in this Motion will take place before the Honorable

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

Josephine Staton Tucker, District Court Judge for the Central District of California. The hearing will be at Courtroom 10A in the United States Courthouse located at 411 West Fourth Street, Santa Ana, California 92701.

Plaintiff will and hereby does move the Court for an Order:

1. Granting final approval of the Settlement as fair, reasonable and adequate, and directing that the Settlement shall be effectuated in accordance with its terms,
2. Approving the amount of attorney's fees and costs and the service award requested by Class Counsel as fair and reasonable, ordering that the same be paid in accordance with the terms and conditions of the Agreement, and
3. Dismissing the action with prejudice pursuant to the terms of the Agreement.

This motion is based upon this notice, the Memorandum of Points and Authorities, affidavits, pleadings and other exhibits in support thereof, as well as any documents or testimony presented at the time of hearing.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place continuously over the past several months, commencing approximately December 17, 2010.

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1
II. SUMMARY OF PERTINENT FACTS .......... 1
III. SUMMARY OF SETTLEMENT TERMS .......... 2
A. Settlement Class .......... 2
B. Class Representative .......... 2
C. Class Counsel .......... 2
D. Benefits and Release .......... 2
E. Settlement Administrator .......... 3
F. Notice .......... 3
G. Claim Process .......... 3
H. Opt-Outs and Objectors .......... 4
I. Attorney's Fees and Costs and Class Representative .......... 4
IV. THE PROPOSED SETTLEMENT MEETS THE REQUIREMENTS FOR FINAL APPROVAL .......... 4
A. Strength of Plaintiff's Case .......... 6
B. Risk, Expense, Complexity and Likely Duration of Further Litigation .......... 6
C. Risk of Maintaining Class Certification .......... 7
D. Settlement Amount .......... 7
E. Extent of Discovery Completed .......... 8
F. Stage of Proceedings .......... 9
G. Experience of Views of Counsel .......... 9
H. No Governmental Participant .......... 9
I. Reaction of the Class .......... 9
J. The Settlement Should be Approved .......... 10
V. Approval of the Award of Attorney's Fees and Costs is Justified .......... 10
VI. Enhancement to the Class Representative is Justified .......... 12
VII. CONCLUSION .......... 13

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

# TABLE OF AUTHORITIES

## Cases

*Burlington v. Dague*, 505 U.S. 557, 120 L. Ed. 2d 449, 112 S. Ct. 2638 (1992) ... 11

*D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1384 (9th Cir. 1990) ... 11

*Fischel v. Equitable Life Assur. Soc'y of the United States*, 307 F.3d 997, 1006 (9th Cir. Cal. 2002) ... 11

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ... 6

*Hanlon v. Chrysler Corporation*, 150 F.3d 1011 (9th Cir. 1998) ... 4, 5

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ... 11

*Nat'l Rural Telecommunication Cooperative v. DIRECTTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ... 4

*Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ... 5, 6

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ... 5, 13

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294 (N.D. Cal. 1995) ... 13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002 ... 11

## Statutes

Cal. Civ. Code § 1788.30 ... 8

Cal. Civ. Code § 1788.30(c) ... 10

Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788-1788.33 ... 1

## Treatises

Newberg on Class Actions (4th Ed. 2002) § 11:38 ... 13

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Greg Sullivan ("Plaintiff"), individually and on behalf of the certified settlement class, brings this motion for an order granting final approval of the Stipulation and Agreement of Settlement ("Agreement").

The settlement is the result of extensive arm's-length negotiations between parties represented by experienced counsel. The settlement is a fair and reasonable resolution of the claims asserted in the lawsuit, providing meaningful compensatory relief to the proposed class and effecting a change in the challenged practice going forward. The Court has already granted preliminary approval of the Settlement, certified a settlement class, and ordered notice be sent to all class members advising them of the settlement and their right to participate in the recovery provided. Notice and claims administration have now been completed in accordance with the Court's orders, more than 1,500 class member have submitted claims, and the settlement is now ripe for final approval.

## II. SUMMARY OF PERTINENT FACTS

The operative Second Amended Complaint ("SAC") alleges generally that Defendants American Express Publishing Corporation ("AEPC") and TIME, Inc. ("TIME") engaged in illegal debt collection when they sent subscribers of Travel + Leisure magazine mail with "OVERDUE INVOICE" on the exterior of the envelope. The SAC alleges such conduct violates the California State Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788-1788.33.

Defendants acknowledge that some Travel + Leisure subscribers were sent envelopes with "OVERDUE INVOICE" on the exterior, but deny liability, contending among other things that neither Defendant is a debt collector as defined by the statutes nor that the challenged conduct was not prohibited debt collection activity.

CALLAHAN THOMPSON SHERMAN & CAUDILL LLP CTSC law

## III. SUMMARY OF SETTLEMENT TERMS

### A. Settlement Class

The settlement class certified by the Court is defined as: "all persons in the State of California who, between January 24, 2008 and December 31, 2010, were subscribers of Travel + Leisure magazine and received from AEPC and/or Time a Qualifying Communication" containing "OVERDUE INVOICE" on the exterior of the envelope. (Agreement, ¶¶ 2.18, 2.25; Order of Preliminary Approval, Docket # 63.)

### B. Class Representative

Greg Sullivan, the named plaintiff in this lawsuit, was appointed by the Court to serve as the Class Representative.

### C. Class Counsel

Callahan, Thompson, Sherman & Caudill, LLC attorneys Charles S. Russell and Robert W. Thompson were appointed to serve as counsel for the Settlement Class.

### D. Benefits and Release

Settlement Class Members were mailed notice and were given the opportunity to receive either a one-year subscription that does not automatically renew to their choice of one of three magazines, including Travel + Leisure, or a cash payment of $27.50. (Agreement, ¶¶ 2.4, 2.28, 4.1, and 4.2.) The cash payment aggregate amount is capped at $180,000. The subscription claims are not capped. (Agreement, ¶ 4.2.) Additionally, the Agreement requires that Defendants agree to refrain from engaging in the challenged conduct for a year. (Agreement, ¶ 4.3.) In exchange, Settlement Class Members who do not exclude themselves will release all claims that were or could have been brought in the Second Amended Complaint based on the conduct alleged therein against the Defendants and related entities. (Agreement, ¶¶ 2.19-20.)

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

**E. Settlement Administrator**

Rust Consulting, Inc. is the Settlement Administrator. (Agreement, ¶ 2.24.) Defendants are separately responsible for paying the costs of administration and notice to the Class. (Agreement ¶8.4.)

**F. Notice**

Notice was mailed to persons qualified to be class members pursuant to the requirements of the Agreement and Preliminary Approval Order. (Agreement, ¶ 8.1, and Declaration of Settlement Administrator.) The notice procedure provided for one re-mailing of returned mail following researching of the USPS National Change of Address List and extends the window to make a claim, opt out or object an additional 20 days following the re-mailing. (Agreement, ¶ 8.2.) The Notice and Claims process has been completed pursuant to the Court's Order of Preliminary Approval and the Agreement. (Declaration of Settlement Administrator.)

**G. Claim Process**

The Agreement provided for a simple claims process. Claim forms were mailed to qualified persons along with the Notice. (Agreement, ¶ 8.5, Declaration of Settlement Administrator.) The Claim Form was designed to be simple, and required only a signature and an updated address, if it had changed. Claim Forms were due 60 days after entry of the Order of Preliminary Approval. The Settlement Administrator verified claims to ensure only eligible Class Members share in the benefits of the settlement, (Agreement, ¶ 8.6), and gave claimants whose forms were incomplete an opportunity to cure deficiencies. (Agreement, ¶ 8.7, Declaration of Settlement Administrator.)

A total of 1,519 valid claims have been received to date, with 23 incomplete claims currently pending cure. (Declaration of Settlement Administrator.) There have been no disputes or disagreements over claims. (Declaration of Charles S.

Russell, ¶ 48.)

**H. Opt-Outs and Objectors**

Class members were given an opportunity to opt out of the Settlement. (Agreement, § IX.) Only one person elected to be excluded, and will not be bound by the Settlement. (Agreement, ¶ 9.3.)

The procedure for objecting to the Settlement is described in Section X of the Agreement, and required class members to file and serve objections within 30 days of the Final Fairness Hearing. (Agreement, § X.) No one has objected.

**I. Attorney's Fees and Costs and Class Representative**

Pursuant to the Agreement of the parties, Class Counsel seeks $100,000 for attorneys' fees and costs, and a service award for Plaintiff Greg Sullivan of $1,000. (Agreement, ¶ 5.1.)

## IV. THE PROPOSED SETTLEMENT MEETS THE REQUIREMENTS FOR FINAL APPROVAL

Fed. R. Civ. P., Rule 23(e) requires the Court to determine whether the proposed settlement is fundamentally fair, reasonable and adequate. Approval of a proposed settlement is done in two steps: (1) a preliminary review and approval by the court, and (2) a final review and approval by the court after notice has been distributed to class members. *See*, *Nat'l Rural Telecommunication Cooperative v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *see also*, *Hanlon v. Chrysler Corporation*, 150 F.3d 1011 (9th Cir. 1998).

At final approval, the Court must determine whether this proposed settlement is fundamentally fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). The Ninth Circuit provides the following factors that may be considered in evaluating the fairness of a class action settlement:

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk,

> expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *see also, Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003).

In evaluating a class action settlement, the private consensual agreement negotiated by the parties is entitled to deference and the Court's role "is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* The settlement is considered as a whole, rather than in its component parts, when determining if it is fair, reasonable and adequate. *Hanlon*, 150 F.3d, at 1026. Because the nature of a settlement is the result of a compromise, the inquiry by the court "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027. "Ultimately, the district court's determination is nothing more than an 'amalgam of delicate balancing, gross approximations, and rough justice.'" *Officers for Justice*, 688 F.2d at 625.

"The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. In assessing the fairness, reasonableness and adequacy of the Settlement, the Court should balance the benefits of the settlement against the continuing risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

Here, all relevant factors favor approval.



CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

### A. Strength of Plaintiff's Case

Plaintiff believes this case has merit and Plaintiff could have prevailed on the merits and in obtaining class certification had those issues been contested. That said, neither obtaining class certification in a contested motion nor prevailing on the merits was assured. Issues of whether Defendants qualify as debt collectors, and whether their activities in collecting subscriptions qualify as debt collection under applicable statutes were hotly contested. Both defendants denied they were subject to the federal or state consumer debt collection laws. Defendants also asserted numerous affirmative defenses which would have been contested. (See Agreement, §1.2.) So although Plaintiff's case, and that of the class, is strong, it was not certain. (See Declaration of Charles S. Russell, ¶ 5-6.)

### B. Risk, Expense, Complexity and Likely Duration of Further Litigation

This action has been litigated since 2009. Pre-class certification discovery had been completed by the time the settlement was reached, and a motion for class certification was filed and set for hearing. Further litigation would have required additional time and expense. As of the time settlement was reached, Plaintiff was in the process of preparing a motion for summary judgment/adjudication. Completion of that motion, along with response briefs and hearing, would have required additional time and expense. It is also likely Defendants would have filed dispositive motions, requiring additional time and expense. (Declaration of Charles S. Russell. ¶ 7.)

At the time settlement was reached, Plaintiff's motion for class certification was pending with a January 24, 2011 hearing date. Defendant's opposition had been filed, but Plaintiff's brief in reply had not yet been prepared or filed. Preparation of that brief and hearing on the motion would have required additional time and expense. Had the class been certified, the case would have required a notice and opt-out period, similar to the one provided in settlement. Defendants agreed to pay the costs of administering the settlement notice. Had class

certification been contested, Plaintiff would likely have borne that expense. (Declaration of Charles S. Russell, ¶ 9-10.)

Trial of this matter, if not disposed of sooner by dispositive motion, was scheduled for May 31, 2011, after having been continued from a January 2011 date. Plaintiff estimates trial would have taken seven to ten days as a class action, and would have required substantial expense of time and money in both actual trial time and in preparation. (Declaration of Charles S. Russell, ¶ 11.)

The likely expense and duration of further litigation would have been substantial. Plaintiff estimates further litigation would have required several hundred additional hours of attorney work, and would have resulted in additional expense of approximately $80,000-100,000, including costs of administering class notice after class certification and a second notice (and possible distribution) after judgment. These estimates of further expense and duration are conservative and they do not include any appellate issues that may have arisen. (Declaration of Charles S. Russell, ¶ 12.)

**C. Risk of Maintaining Class Certification**

This case was not certified to proceed as a class action at the time settlement was reached. A motion for class certification and opposition had been filed, and hearing was set. Plaintiff believes this case was and is appropriate for certification. Defendants contested that issue and filed opposition. Defendants agreed to class certification as part of the settlement, but did not concede the case should be certified. Based on Defendants' opposition to class certification, there is a risk the case would not have been certified, or that certification could have been withdrawn before judgment. (Declaration of Charles S. Russell. ¶ 24-25.)

**D. Settlement Amount**

The Agreement was reached through extensive, good faith arm's-length negotiations by parties represented by experienced counsel. (Agreement, ¶ 1.3, Declaration of Charles S. Russell, ¶ 31.) The settlement is fair and reasonable



CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

given the possible recovery compared to the settlement amount. The total recovery available for the case is capped by statute to no more than $1,000 per individual and no more than $500,000 for the class. Cal. Civ. Code § 1788.30.) With a class the size here, initially estimated at 6,576 people, the total individual award was, therefore, effectively capped at $76.

This settlement, on the other hand, allows class members to choose from between a cash award of $27.50 or a one-year non-automatically-renewing magazine subscription. The current cover price value of a one-year subscription to Travel + Leisure and Food and Wine is approximately $59.88, and the one-year subscription rate for Sky Guide is $29.95 – each of which is greater than the cash award. (Declaration of Charles S. Russell, ¶ 33.) These are valuable options, and class members were given the opportunity to choose the relief that is most appealing to them. More than 1,500 did. Additionally, pursuant to the Agreement, Defendants have agreed to cease using the challenged language for a period of 12 months from the time the tentative agreement was reached. (Agreement, ¶ 4.3.) Coupled with the fact that Defendants stopped using the challenged material immediately following the filing of this lawsuit in February of 2009, the lawsuit and settlement will have resulted in nearly three years of changes to Defendants' practices, with no release promised if the conduct resumes. (Declaration of Charles Russell, ¶ 34.)

**E. Extent of Discovery Completed**

As detailed in the supporting declaration this settlement was reached after extensive discovery had been completed. The discovery and investigation were sufficiently advanced so as to allow counsel and the parties to make informed decisions regarding settlement. (See Declaration of Charles S. Russell, ¶ 13-23.)



CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

### F. Stage of Proceedings

The settlement was reached at a relatively advanced stage of litigation. Discovery sufficient for class certification had been completed and a motion for class certification was filed and pending. Plaintiff was in the process of preparing a potentially dispositive motion. Trial was set for May 31, 2011. The proceedings were sufficiently progressed to allow the parties a full understanding of the issues and facts by the time the case resolved. (Declaration of Charles S. Russell, ¶ 7-11.)

### G. Experience of Views of Counsel

Class counsel is experienced in handling such cases. (Declaration of Charles S. Russell, ¶ 2-4.) Counsel for both parties have heartily endorsed the settlement as fair and reasonable. (Agreement, § 1.3-1.4, Declaration of Charles S. Russell, ¶ 26.)

### H. No Governmental Participant

There are no governmental entities involved in the litigation, and Plaintiff is unaware of any likelihood of any governmental participant. (Declaration of Charles S. Russell, ¶ 48.)

### I. Reaction of the Class

Class member reaction has been positive. As described in the declaration of the Settlement Administrator submitted herewith, some 5,580 class members were mailed notice that was not returned as undeliverable. 1,578 class members, or 28% of those, submitted claims, of which 1,519 are currently valid with 23 still awaiting cure. Only one person requested exclusion. No one has objected. The majority of claimants, 1,357, or 89% of valid claims, requested the cash benefit.

The Declarations of Class Counsel and class members submitted herewith further attest that class member reaction to the settlement has been positive. (Declaration of Charles S. Russell, ¶ 27-30, Declaration of Shirley Robinson, Declaration of Sylvia Shattuck.)



CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

### J. The Settlement Should be Approved

In summary, the Settlement Agreement is the result of non-collusive arms-length negotiations between adverse parties who were both represented by skilled counsel. The Settlement resolves genuine differences regarding contested issues, and is in all respects a fair, reasonable, and adequate resolution of this case. The claims process has occurred as ordered, and class members have been given an opportunity to participate or not as they saw fit. The Settlement should not be granted final approval so class member claims can be processed and paid.

## V. APPROVAL OF THE AWARD OF ATTORNEY'S FEES AND COSTS IS JUSTIFIED.

As part of the Settlement, Defendant has agreed to an award of $100,000.00 in attorneys' fees and costs, which amount will not reduce the overall recovery to the Class. The parties negotiated this amount only after the amount and type of class relief was agreed upon. Plaintiff's counsel would be entitled to recover fees under Cal. Civ. Code § 1788.30(c) if they prevailed. The United States Supreme Court has endorsed this type of consensual resolution of attorneys' fee issues as the ideal to which litigants should strive. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee").

In such a case, where no common fund is created and the class would have been entitled to attorneys' fees and costs had they prevailed, it is appropriate to award fees based on the lodestar method, where fees are determined by multiplying a reasonable number of hours worked by a reasonable hour rate. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Fischel v. Equitable Life Assur. Soc'y of the United States*, 307 F.3d 997, 1006 (9th Cir. Cal. 2002) "There is a strong presumption that the lodestar figure represents a reasonable fee." *Fischel*, 307 F.3d at 1007 (quoting *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1384 (9th Cir. 1990), overruled on other grounds by *Burlington v. Dague*,

505 U.S. 557, 120 L. Ed. 2d 449, 112 S. Ct. 2638 (1992)).

> Courts must consider the following factors -- at least those most relevant under the circumstances -- in calculating the lodestar figure: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
> *Fischel*, 307 F.3d at 1007, n.7.

As a preliminary matter, the amount sought as fees here is far **less** than Class Counsel's actual lodestar. Applying Class Counsel's most recently approved hourly rates to the hours actually worked on this case the lodestar amount is $248,995.00 to date in fees alone. (Declaration of Charles S. Russell, ¶ 38.) The $100,000 agreed upon to cover all fees and costs is approximately 40% of the actual lodestar.

Additionally, this award of attorneys' fees and costs satisfies all the relevant factors, as detailed in the attached declarations of counsel. The time and labor required for this case is approximately 450 hours. The action involved novel and difficult questions of whether Defendants' collection activities with regard to allegedly overdue subscriptions qualifies as debt collection activity, and whether either defendant qualify as debt collectors under the relevant statute, as well as issues of class certification. Litigation and settlement of these complex issues required skilled attorneys. Plaintiff counsel provided representation on a contingency basis and the extensive work required in this litigation has required the firm to forego significant other work and advance costs, and has resulted in a decline in the firms' annual income at a time when routine business expenses still



CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

had to be met. The fee is significantly lower the Class Counsel's customary fee, as it represents less than half the actual lodestar. There were no particular time limitations imposed by the client in this case, but the statute of limitations and trial schedule imposed limitations that counsel had to meet. The amount involved in this case, had it proceeded to trial, was capped at $500,000 total for the class, plus an award of attorney's fees and costs. The initial class estimate put the maximum effective recovery for class members at $76, whereas the settlement provided for $27.50 per person or a subscription worth significantly more with no risk of loss. Class counsel is experienced and has a strong reputation. The case's cap on class recovery renders it less desirable for attorneys to take. Counsel has a professional relationship with the client, who participated closely in this action. (*See* Declaration of Charles S. Russell, ¶ 37-46; Declaration of Robert W. Thompson, ¶ 2-9.) Additionally, the $100,000 is inclusive of the $2,839.75 in costs incurred. (Declaration of Charles S. Russell, ¶ 47.)

In light of all these factors, the award of attorneys' fees and costs here is warranted.

## VI. ENHANCEMENT TO THE CLASS REPRESENTATIVE IS JUSTIFIED

A class representative service award is justified. Newberg on Class Actions (4th Ed. 2002) § 11:38; *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294 (N.D. Cal. 1995). In *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003), the court identified the following factors, among others, to be considered in approving enhancements to a named plaintiff: the actions the plaintiff has taken to protect the interests of the class and the degree to which the class has benefited from those actions.

Here, there is but one Class Representative, Greg Sullivan, and the Settlement provides that he receive $1,000 for his services to the class in this matter. Mr. Sullivan has taken concrete actions to benefit the class. He



CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

investigated and filed the class action complaint, educated class counsel and staff as to the facts, provided clear and ample written documentation, appeared for his deposition, monitored all aspects of settlement, and assisted throughout the litigation. Without his work, the class members would likely have received no benefit. Because of his efforts, class members were provided with an immediate change in company policy to cease the challenged conduct. Class members also received the ability to participate in the settlement and to receive their choice of the settlement benefit they preferred, either a cash payout or a subscription. (See Declarations of Greg Sullivan; Charles S. Russell, ¶ 35-36 for detailed information concerning Plaintiff's contribution.)

This work on behalf of and benefit conferred on the class justify the award of $1,000 agreed to here. This compensation will not reduce the overall recovery to the Class, and should be approved.

## VII. CONCLUSION

The proposed Settlement is a fair and reasonable resolution to the issues raised in this litigation, and Plaintiff requests that it be granted final approval and the attached proposed order entered.

Respectfully submitted,

DATED: September 26, 2011

**CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP**

By _/s/ Charles S. Russell____________
ROBERT W. THOMPSON
CHARLES S. RUSSELL
Attorneys for Plaintiffs
GREG SULLIVAN, individually, and on behalf of all others similarly situated

G:\PLF\0090004\Mtns\Final Approval\Mtn for FINAL Settlement Approval.doc



CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP