UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREG SULLIVAN, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN EXPRESS PUBLISHING CORPORATION, and TIME, INC.<br><br>Defendants. | CASE NO. SACV 09-142-JST (ANx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL SETTLEMENT APPROVAL** |

Before the Court is Plaintiff Greg Sullivan's unopposed Motion for Final Settlement Approval ("Approval Motion"). (Doc. 64.) Having reviewed the papers, held a fairness hearing, and taken the matter under submission, the Court GRANTS Plaintiff's Approval Motion.

**BACKGROUND**

On February 5, 2009, Plaintiff, on behalf of himself and all others similarly situated, filed a class-action complaint against Defendants American Express Publishing Corporation ("AEPC") and Time, Inc. ("Time") (collectively, "Defendants") alleging that Defendants engaged in illegal debt collection when they sent subscribers of *Travel+Leisure* magazine envelopes containing the phrase "OVERDUE INVOICE" on the outside. (Compl. ¶ 13, Doc. 1.) Based on Defendants' mailing, Plaintiff asserted a claim for unfair debt collection under the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.33 (the "RFDCPA"). (*Id.* ¶¶ 12-14.) Plaintiff's Second Amended Complaint ("SAC"), which is the operative complaint in this matter, asserts only a claim under the RFDCPA. (*See* SAC, Doc. 33.) Accordingly, the Court is exercising supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367. *Lacey v. Maricopa Cnty.*, 649 F.3d 1118, 1137 (9th Cir. 2011) (district court has discretion to exercise supplemental jurisdiction over state law claims after dismissal of federal claims).

On December 20, 2010, Plaintiff filed a notice of settlement. (Notice of Settlement, Doc. 53.) Thereafter, on May 13, 2011, Plaintiff filed an unopposed motion for preliminary settlement approval, which the Court granted on June 30, 2011 (Order Granting Pl.'s Mot. for Preliminary Settlement Approval ("Approval Order"), Doc. 63).

The Approval Order conditionally certified a settlement class of "all persons in the State of California who, between January 24, 2008 and December 31, 2010, were subscribers of *Travel+Leisure* magazine and received from AEPC and/or Time a Qualifying Communication" containing "the words 'OVERDUE NOTICE' on the exterior

of the envelope" (the "class"). (Approval Order at 14; Stipulation and Agreement of Settlement ("Settlement Agreement") ¶ 3.2, Doc. 57-1.) As preliminarily approved, the Settlement Agreement provides class members with the option to receive either a one-year subscription to their choice of three magazines, including *Travel+Leisure,* or a cash payment of up to $27.50. (Settlement Agreement ¶¶ 2.3, 2.28, 4.1, 4.2.) The subscription does not include an automatic renewal provision. (*Id.* ¶ 2.28.) The cash payment aggregate amount is capped at $180,000 and the payments to each individual class member will be pro-rated accordingly. (*Id.* ¶ 4.2.) The Settlement Agreement further requires Defendants to refrain from engaging in the challenged conduct for a year. (*Id.* ¶ 4.3.) Class members who elected not to exclude themselves from the class will release all claims that were or could have been brought in the SAC. (*Id.* ¶¶ 2.19-2.20.) Prospective class members who elected to opt-out of the class were permitted to do so by sending notice to the Settlement Administrator within 60 days of the Approval Order. (*Id.* § IX, Ex. A.)

The Approval Order preliminarily approved the parties' Settlement Agreement and the procedure for effecting class notice. (Approval Order at 14.) It also appointed Greg Sullivan, the named plaintiff in this action, as class representative, and Callahan, Thompson, Sherman & Caudill, LLC attorneys Charles S. Russell and Robert W. Thompson as class counsel. (*Id.* at 6-7, 14.) Rust Consulting, Inc. was appointed to serve as settlement administrator. (Settlement Agreement ¶ 2.24.)

Thereafter, the parties provided notice to the class in accordance with the procedure approved by the Court's Approval Order. (*See* Approval Mot. at 3-4; Schmidt Decl. ¶¶ 4-7, Doc. 64-4.) The settlement administrator received 1,519 valid claims, with 23 incomplete forms that are pending cure. (Schmidt Decl. ¶ 10.) Only one person opted out of the class. (*Id.* ¶ 6.) Of the valid claims, 1,357 class members elected to receive the cash benefit, 112 selected a one-year subscription to *Travel+Leisure* magazine, 45 selected a one-year subscription to *Food & Wine* magazine, and 5 selected a one-year subscription to *Sky Guide* magazine. (*Id.* ¶ 11.)

Plaintiff filed his Motion for Final Settlement Approval on September 26, 2011. On October 19, 2011, the Court ordered the parties to provide supplemental notice to the class regarding Plaintiff's attorneys' fee motion in accordance with *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010). (Order Requiring Additional Notice to Class, Doc. 66.) The Court approved the parties' proposed supplemental notice form and procedure on December 7, 2011. (Order Approving Supplemental Notice Form and Procedure, Doc. 69.) And the parties provided supplemental notice to class members in accordance with the Court's Order. (Supp. Russell Decl. ¶¶ 7-14, Doc. 71.) No class member filed an objection to the fee motion. (*Id*. ¶ 14.)

**CERTIFICATION OF THE SETTLEMENT CLASS**

Where, as here, "the parties [to a class action] reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted). The first step in that process requires "the district court [to] assess whether a class exists, . . . for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*. (citation and internal quotation marks omitted.)

In its Approval Order, the Court fully considered and granted conditional certification of the settlement class under Rule 23. (Approval Order at 3-9, 14.) The Court further concluded that Plaintiff is an adequate representative of the class and appointed him as class representative. (*Id*. at 7, 14.) It also considered the adequacy of Plaintiff's counsel under Rule 23(g), and appointed Charles S. Russell and Robert W. Thompson class counsel in this matter. (*Id*.) The Court has fully reviewed the Approval Motion and all supporting documentation, and sees no reason to depart from the conclusions set forth in its Approval Order regarding class certification or the appointment of class representative and class counsel. Accordingly,

the Court affirms the conclusions regarding certification contained in the Approval Order and incorporates them here.

**FINAL APPROVAL OF SETTLEMENT**

**I. LEGAL STANDARD**

To approve a proposed class-action settlement, Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Staton*, 327 F.3d at 959 (internal citation and quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "'It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness,' and 'the settlement must stand or fall in its entirety.'" *Staton*, 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). The ultimate decision to approve a class action settlement rests in the sound discretion of the district court. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

**II. DISCUSSION**

A consideration of the above-enumerated factors favors final approval of the proposed settlement.

**A. *<u>Strength of Plaintiff's Case, Further Litigation, and Extent of Discovery Completed</u>***

This case was settled after substantial discovery had been completed, which placed Plaintiff and Plaintiff's counsel in a position to fully evaluate the strength of their litigation position and the propriety of settlement. (Russell Decl. ¶¶ 13-23, Doc. 64-2.) Plaintiff notes that, although he believes his case was strong, it was far from certain because the Defendants challenged whether they are "debt collectors" engaged in "debt collection" under the RFDCPA. (Approval Mot. at 6.) Defendants also asserted numerous contested affirmative defenses, which could have resulted in no recovery to the class and which would have increased the cost and duration of litigation. (*Id.* at 6-7.)

Plaintiff has litigated this case since 2009. Though pre-certification discovery had been largely completed by the time of settlement, the case would have required substantial additional litigation if a settlement had not been reached. (*Id.* ¶¶ 7-8.) Specifically, briefing on Plaintiff's motion for class certification was not yet completed; Plaintiff's motion for summary judgment had not yet been filed; and an estimated seven to ten day trial would have been necessary if this action had proceeded. (*Id.* ¶¶ 8-9, 11.) Plaintiff's counsel estimates that further litigation would have required additional expenditures of $80,000-$100,000. (*Id.* ¶ 7.)

In light of these facts, and because the proposed settlement was reached through extensive, good faith arms-length negotiations after more than two years of litigation (Settlement Agreement ¶ 1.3; Russell Decl. ¶ 31), the Court concludes that the parties' decision to reach a settlement in this matter was reasonable.

**B. *<u>Risk of Maintaining Class Certification</u>***

At the time settlement was reached in this action, Plaintiff had filed a motion for class certification, which Defendants opposed. The Court conditionally certified a settlement class in its Approval Order, which suggests that class certification would have been successful. However, Defendants' opposition to the certification motion posed at

least a small risk that certification would have failed. Accordingly, the Court finds that the risk of maintaining class certification neither favors, nor disfavors settlement approval.

### ***C. Amount Offered in Settlement***

Because Plaintiff and the class seek statutory damages under the RFDCPA, the total recovery is capped at $500,000 pursuant to 15 U.S.C. 1692k. *See* Cal. Civ. Code § 1788.17; 15 U.S.C. § 1692k. With a potential class size of 6,576 individuals, the total individual award, if victorious, would thus be $76. The Settlement Agreement allows class members to choose between a cash award of $27.50 or a one-year magazine subscription, valued between $29.95 and $59.88, subject to a cap on all cash payments of $180,000. (Settlement Agreement ¶¶ 4.1, 4.2; Russell Decl. ¶ 33.) Additionally, Defendants have agreed to cease using the challenged conduct for one year. (Settlement Agreement ¶ 4.3.) Considering the risks of proceeding to trial and comparing the settlement payout with the maximum payout that could be obtained through trial, the settlement amount is fair, reasonable, and adequate.

### ***D. Experience and Views of Counsel***

Plaintiff's counsel has extensive experience serving as counsel in class actions. (Russell Decl. ¶¶ 2-4.) Along with Defendants' counsel, Plaintiff's counsel fully endorses the settlement agreement as fair, reasonable, and adequate. (Settlement Agreement ¶¶ 1.3, 1.4; Russell Decl. ¶ 26)

### ***E. Reaction of Class Members to Proposed Settlement***

Class members have reacted positively to the proposed settlement. Of the 5,580 class members who received class notice, none filed objections and only one opted out of the settlement. (Russell Decl. ¶¶ 27-30.) The Court recognizes that two additional putative class members submitted invalid opt-out requests. (Schmidt Decl. ¶ 10; Suppl. Russell Decl. ¶ 12.) Even assuming those opt-out requests had been valid, they do not call into question the overall positive reaction of the class in light of the 1,519 valid claim submissions opting to receive benefits under the Settlement Agreement.

**ATTORNEYS' FEES**

The Settlement Agreement provides for attorneys' fees in the amount of $100,000 for Plaintiff's counsel, which will not reduce the overall recovery to the class. Federal Rule of Civil Procedure 23(h) permits a court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

Here, both the RFDCPA and the parties' Settlement Agreement authorize the award of attorney's fees to class counsel. Cal. Civ. Code § 1788.30(c); (Approval Mot. at 10.) Because California law governed the claim at issue in this case, it also governs the calculation of fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-488 (9th Cir. 2002); *Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir.1995).

California courts apply the "lodestar" approach to determining reasonable attorneys' fees in class actions brought under fee shifting-statutes that do not result in the creation of a common fund. *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 (2009); *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26-28 (2000). They have also specifically applied the loadstar approach to fee awards under the RFDCPA. *Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 349-50 (2009).

The lodestar is calculated "by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556. "The reasonable hourly rate is that prevailing in the community for similar work." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) (internal citations and quotation marks omitted). "Once the Court has fixed the loadstar, it may increase or decrease that amount by applying a positive or negative multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *In re*

*Consumer Privacy Cases*, 175 Cal. App. 4th at 556 (citations and internal quotation marks omitted).

As part of their settlement, the parties have agreed to an award of $100,000 in attorneys' fees and costs. (Russell Decl. ¶ 37.) Based upon the attorney billing records submitted in support of the fee award, Plaintiff's counsel expended a total of 449.9 hours working on this matter, including 437.5 hours by Charles S. Russell, an attorney with seven years of experience, and 12.4 hours by Robert W. Thompson, a partner with thirty years of experience. (*Id.* ¶ 38, Ex. 1; Thompson Decl. ¶¶ 2-6, Doc. 65.) Therefore, the Settlement effectively seeks a lodestar of $100,000, based upon 449.9 hours worked at an hourly rate of $222.27 per hour ($100,000/449.9 = $222.27).

A $222.27 hourly billing rate is consistent with that deemed a reasonable prevailing market rate for attorney work by the Courts of this District in cases brought under the RFDCPA. *See, e.g.*, *Powell v. Blackrock Asset Mgmt., LLC*, No. SACV 11–0517–JST (RNBx), 2011 WL 4551450, at *5 (C.D. Cal. Sept. 30, 2011) (approving attorney hourly rate of $350 per hour in case involving RFDCPA and the federal Fair Debt Collection Practices Act ("FDCPA")); *Mayer v. RSB Equity Grp.*, LLC, No. CV 10–9096 ODW (AJWx), 2011 WL 2650185, at *2 (C.D. Cal. July 5, 2011) (approving $250 hourly attorney rate in action under RFCDPA and FDCPA); *Krapf v. Nationwide Credit Inc.*, SACV 09-00711 JVS (MLGx), 2010 WL 4261444, at *5 (C.D. Cal. Oct. 21, 2010) (approving hourly rates of $225.00 and $250.00 for associates with only one and three years of experience). Accordingly, the Court concludes that the hourly rates for attorney time reflected by the $100,000 award are reasonable. *See Davis v. City of San Diego*, 106 Cal. App. 4th 893, 904 (2003) (relying on reasonable hourly rates found by other courts).

Plaintiff also attached a statement of services authenticated by his counsels' declarations, in which Plaintiff's attorneys set forth the tasks performed by each attorney and the duration of those tasks, for a combined total of 449.9 hours of work on behalf of Plaintiff. The Court concludes that Plaintiff has met his burden of documenting and submitting as evidence the appropriate attorney hours expended in the litigation. *See*

*Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) ("trial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation.").

The Court concludes that the fee amount set forth in the settlement is reasonable. The hourly rate and attorney hours support a lodestar of $100,000. Plaintiff has not requested a multiplier or adjustment, and the Court concludes that a negative adjustment is not required. Accordingly, the Court approves the $100,000 attorneys' fee award.

**ENHANCEMENT TO THE CLASS REPRESENTATIVE**

The Settlement Agreement provides that Plaintiff will receive a $1,000 service award to compensate him for his service to the class in this matter. District courts have the discretion to award incentive payments to named plaintiffs as compensation for their actions taken on behalf of the class. *Stanton*, 327 F.3d at 977; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). "The criteria that courts may consider in determining the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation." *White v. Experian Info. Solutions, Inc.* 803 F. Supp. 2d 1086, 1111 (C.D. Cal. 2011); *see also Stanton*, 327 F.3d at 977.

Here, the above-enumerated factors support a $1,000 incentive payment to Plaintiff. Plaintiff expended substantial time and effort prosecuting this action on behalf of the class, including: (1) investigating and researching potential claims against Defendants; (2) retaining class counsel and educating them regarding the facts of this action; (3) working with class counsel extensively during the discovery process; (4) sitting for a deposition; and (5) participating in settlement negotiations and the settlement approval process. (Sullivan Decl. ¶¶ 8-19, Doc. 64-3; Russel Decl. ¶ 35.) The amount of the

service award is not excessive, as it comports with the statutory damages Plaintiff would have received if he had prosecuted an individual action under the RFDCPA. *See* Cal. Civ. Code § 1788.30(b) (permitting statutory damages of $100 to $1,000 as a penalty to the debt collector).

Accordingly, the Court approves the $1,000 service award to Plaintiff.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Approval Motion is GRANTED.

DATED: February 21, 2012

JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE